## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

| | | |
|---|---|---|
| Luis O. Gonzalez, an individual, | ) | |
| Soneros Cigars Zone, Inc., a Florida corporation, | ) | CIVIL ACTION: |
| Omar Gonzalez, an individual, | ) | |
| Industria Tabacalera Los Charutos, S.A., | ) | |
| A company organized under the laws of | ) | |
| Nicaragua, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| Mederos Cigars, LLC., d/b/a Cubanacan Cigars, | ) | |
| A Florida corporation, | ) | |
| Robert Mederos, an individual, | ) | |
| Juan C. Mederos, an individual. | ) | |
| _____ | ) | |

## COMPLAINT FOR TRADEMARK INFRINGEMENT, BREACH
## OF DISTRIBUTION AGREEMENT, AND RELATED CAUSES

COMES NOW, Luis O. Gonzalez, Soneros Cigars Zone, Inc., Omar Gonzalez, and Industria Tabacalera Los Charutos, S.A. d/b/a Los Charutos Cigar Factory (collectively "Plaintiffs") and file this action for equitable and monetary relief against Defendants Mederos Cigars, LLC. d/b/a Cubanacan Cigars, Robert Mederos, and Juan C. Mederos (collectively "Defendants") for trademark infringement,[1] breach of contract, and related business torts. In support of same, Plaintiffs offer the following factual and legal support:

## THE PARTIES

1.      Luis O. Gonzalez ("Luis Gonzalez") is an individual residing in Miami-Dade County, Florida, and is the owner and principal of Plaintiff Soneros Cigars Zone, Inc.

---

[1] Trademark infringement causes arise under infringement of a registered mark under 15 U.S.C. §1114 and of a common law mark under 15 U.S.C. §1125.

2.      Soneros Cigars Zone, Inc. ("Soneros") is a Florida corporation located and doing business in Miami-Dade County, Florida.

3.      Omar Gonzalez ("Omar Gonzalez") is an individual residing in Esteli, Nicaragua and is the father of Plaintiff Luis Gonzalez.

4.      Industria Tabacalera Los Charutos, S.A. d/b/a La Corona and Los Charutos ("Los Charutos") is owned and operated by Omar Gonzalez and is a cigar factory organized under the laws of Nicaragua and located and doing business in Esteli, Nicargua.

5.      Defendant Mederos Cigars, LLC. d/b/a Cubanacan Cigars ("Cubanacan") is a Florida corporation engaged in the cigar wholesale business, located and doing business in Miami-Dade County, Florida.

6.      Defendant Robert Mederos ("Robert Mederos") is an individual and upon information and belief resides in Miami-Dade County, Florida.  He is the moving force of Defendant Cubanacan.

7.      Juan C. Mederos, is an individual, and upon information and belief resides in Miami-Dade County, Florida.  He is the listed president of Defendant Cubanacan.  He signed or otherwise assented to the SONEROS Distribution Agreement on behalf of Cubanacan.

**PERSONAL JURISDICTION**

8.      Personal jurisdiction is appropriate as to all Defendants by the nature of their residence and place of doing business as well by agreement entered into in paragraph 10 of the SONEROS Distribution Agreement. See Exhibit A.[2]

---

[2] Plaintiff Soneros currently only has the version marked "proposed" in its possession, but confirms that its principal signed this version and hand-delivered same to counsel for Defendant Mederos

## SUBJECT MATTER JURISDICTION

9.      Subject matter jurisdiction is appropriate pursuant to federal question under 28 U.S.C. §§1338(a) and (b) and supplemental jurisdiction under 28 U.S.C. §1367(a).   The federal question arises under infringement of a registered trademark(s), 15 U.S.C. §1114, and infringement of a common law mark under 15 U.S.C. §1125.

## VENUE

10.      Venue is proper pursuant to 28 U.S.C. §1391(b)(2) and by agreement of the parties in paragraph 10 the SONEROS Distribution Agreement.   See Exhibit A.

## THE FACTS

11.      Plaintiff Soneros is the owner of Federal Trademark Registration No. 4,464,106 "SONEROS" (words only) (the "'106 SONEROS Word Mark") registered on January 7, 2014.  See Exhibit B.

12.      Plaintiff Soneros is also the owner of Federal Trademark Registration No. 4,467,906 "SONEROS and Design" (the "'906 SONEROS Design Mark") registered on January 14, 2014.  See Exhibit C.

13.      Both the '106 SONEROS Word Mark and the '906 SONEROS Design Mark are currently alive and subsisting and fully enforceable.

14.      By way of written assignment dated March 30, 2013 *nunc pro tunc*, Plaintiff Luis Gonzalez is the assignee of all right and title to the common law mark "H.R." and the related Application Serial No. 85/402,797 pending at the United States Patent and Trademark Office.

without receiving a final version.  The existence of a distribution agreement was confirmed by counsel for Defendant Mederos in response to Plaintiff Soneros' notice of termination sent July 9, 2015.

15.      Plaintiffs Omar Gonzalez and Luis Gonzalez are father and son (respectively) and jointly operate Industria Tabacalera Los Charutos, S.A. a/k/a Los Charutos, a premium cigar manufacturing facility located in Esteli, Nicaragua.

16.      Los Charutos produces the highly rated SONEROS, H.R., and CUBANACAN cigars.   All cigars are handmade and considered to be premium cigars.

17.      On or about July 2013 the Plaintiff Soneros and Defendant Cubanacan negotiated a distribution agreement ("the SONEROS Distribution Agreement") that sets forth the business relationship between the parties as it relates to the production, distribution, and sale of the SONEROS brand cigars in the United States. See Exhibit A.

18.      The SONEROS Distribution Agreement was agreed to and signed by Plaintiff Luis Gonzalez on behalf of his company Soneros Cigars Zone, Inc. and hand-delivered to Cubanacan's counsel Ruben Alcoba, Esq. Plaintiff Luis Gonzalez was not provided a fully executed copy of the SONEROS Distribution Agreement, but Defendants have since ratified the existence of the SONEROS Distribution Agreement. Thus, the existence of the SONEROS Distribution Agreement is not in dispute.

19.      The SONEROS Distribution Agreement clearly sets forth the duties and obligations of the parties, namely, that Plaintiff Soneros, through Plaintiffs Omar Gonzalez and Los Charutos, are the manufacturers and owners of certain trademarks such as SONEROS and other brands, including private label brands, and that Defendants will act as the exclusive distributor of such brands in the United States marketplace.

20.      Under the SONEROS Distribution Agreement, Defendant Cubanacan was charged with the duty to import, distribute and sell the SONEROS cigars in the United States.

21.     Under the SONEROS Distribution Agreement, Defendant Cubanacan agreed that it "shall pay" to Plaintiff Soneros a commission of 60 percent (60%) of all net sales of the cigars made directly by Cubanacan.

22.     Pursuant to the SONEROS Distribution Agreement, the "commissions" were payable to Plaintiff Soneros monthly based upon all paid sales received by Cubanacan in the previous thirty (30) days. See Exhibit A, para. 4.   Specifically, such payments were due to be paid on the fifth (5th) day of each month based on the collected sales received the previous month.  Id.

23.     To date, Defendant Cubanacan has not paid any commission or other payments to Plaintiff Soneros or any other Plaintiff for the cigars that it imported from Plaintiffs and distributed and sold throughout the United States. See Declaration of Luis Gonzalez.

24.     In addition to supplying all cigars for distribution, Plaintiff Soneros paid for the construction of the trade show booth at the IPCPR 2014 event held in Las Vegas, Nevada, which featured the "SONEROS", "CUBANACAN", and "H.R." branded cigars. The "CUBANACAN" and "H.R." cigars are discussed below and subject to separate agreements.

25.     Plaintiff Soneros also paid Defendants Cubancan and Robert Mederos directly for many travel expenses and other expenses associated with the promotion of the SONEROS and H.R. brands in the United States.

26.     During the term of the SONEROS Distribution Agreement, Plaintiff Luis Gonzalez sent Defendant Cubancan and Robert Mederos several business and personal checks totaling over $130,000 to assist with the production costs of the subject cigars.

27.     In furtherance of the SONEROS Distribution Agreement, Plaintiff Los Charutos manufactured and made available for Defendant Cubanacan's import into the United States cigars bearing the SONEROS brand.

28.     Separately, Plaintiff Los Charutos made CUBANACAN branded cigars for the benefit of Defendant Cubanacan.  These goods were produced under an oral private label agreement ("the CUBANACAN Private Label Agreement") whereby Defendant Cubanacan would pay for the finished goods once sold.  To date, Defendant Cubanacan has not paid for any of the premium cigars bearing the CUBANACAN marks made under the CUBANACAN Private Label Agreement.[3]

29.     Apart from the SONEROS Distribution Agreement and the CUBANACAN Private Label Agreement, there was a third agreement, namely, an oral agreement for Defendant Cubanacan to distribute and sell the "H.R." brand (the "H.R. Agreement").  Plaintiffs would produce the product in their Esteli, Nicaragua factory and pay for all promotional expenses in the United States. Defendant Cubanacan would distribute and sell the "H.R." cigars in the United States and pay Plaintiffs eighty percent (80%) of the net sales.

30.     Plaintiff Los Charutos' costs associated with the manufacture of all of these finished goods exceed $800,000.  All goods were created pursuant to the SONEROS Distribution Agreement, CUBANACAN Private Label Agreement, and H.R. Agreement with the expectation that Defendant Cubanacan would pay for the goods once sold in the United States.

---

[3] Prior to the CUBANACAN Private Label Agreement, Los Charutos manufactured short-filler cigars for Defendant Cubanacan.  While some payment has been received for the production of those short-filler cigars, there remains a balance.  It follows that any payments were applied to aging balances, and no monies have been received for the premium cigars produced under the CUBANACAN brand.

31.     Since no payments were made pursuant to the agreements, on July 9, 2015, Plaintiff Soneros sent a notice to terminate the SONEROS Distribution Agreement to the appropriate contact as required by paragraph 9 of the SONEROS Distribution Agreement.  See Exhibit A.

32.     Counsel for Defendants rejected the termination notice, and contrary to Plaintiff Soneros' demands, Defendants continued to offer and sell the SONEROS brand cigars as well as the H.R. cigars.  No monies were sent to Plaintiffs from the sale of those brands under those agreements.  Further, Defendants have failed to return any of the goods as demanded by Plaintiffs.

33.     Each day that Defendants market and offer for sale the Plaintiffs' SONEROS and the H.R. brand cigars, causes, and will continue to cause, significant injury to Plaintiffs' business and trademarks.

34.     Plaintiffs have attempted to resolve this matter without court intervention, but have been unable to do so.

**I.      Breach of Contract. The SONEROS Distribution Agreement.**

35.     Plaintiff Soneros realleges and incorporates the foregoing allegations contained in paragraphs 1-34 as if fully stated herein.

36.     On or about July 2013, Plaintiff Soneros and Defendant Cubanacan entered into a distribution agreement for the production and distribution of "SONEROS" brand cigars and private label cigars manufactured at the Los Charutos cigar factory.  See Exhibit A.

37.     The terms of the SONEROS Distribution Agreement were clear enough that the parties could understand what each was supposed to do.

38.     The parties agreed to give each other something of value. Namely, Plaintiff Soneros would, through the Los Charutos cigar factory, produce premium cigars under the "SONEROS" brands and make such cigars available for import by Defendant Cubanacan.  Defendant Cubanacan, in turn, would sell the goods in the United States and pay Plaintiff Soneros sixty percent (60%) of the proceeds (after certain expenses) on a monthly basis.  Id.

39.     The parties agreed to the essential terms of the contract.

40.     Plaintiffs did everything required by the SONEROS Distribution Agreement.

41.     Defendants breached the agreement by failing to make any payments as required by the SONEROS Distribution Agreement.

42.     Plaintiffs have been harmed by Defendants' breach of the SONEROS Distribution Agreement.

**II.     Breach of Contract. The CUBANACAN Private Label Agreement.**

43.     Plaintiffs reallege and incorporate the foregoing allegations contained in paragraphs 1-34 as if fully stated herein.

44.     On or about July 2013, Plaintiffs and Defendant Cubanacan entered into an oral private label agreement for the production of the CUBANACAN brand cigars.

45.     The terms of the CUBANACAN Private Label Agreement were clear enough that the parties could understand what each was supposed to do.

46.     The parties agreed to give each other something of value. Namely, Plaintiffs would produce premium cigars under the CUBANACAN brand. Defendant Cubanacan, in turn, pay Plaintiffs for the costs of production. Defendant Cubanacan owns

the CUBANACAN brand, and no further payments beyond the costs of production were due to Plaintiffs.

47.     The parties agreed to the essential terms of the contract.

48.     Plaintiffs did everything required by the CUBANACAN Private Label Agreement.

49.     Defendants breached the agreement by failing to make any payments for the production of these cigars as required by the CUBANACAN Private Label Agreement.  Any payments that were made by Defendant Cubanacan were applied to aging balances associated with the production of the short-filler cigars made by Los Charutos for Defendant Cubanacan.

50.     Plaintiffs have been harmed by Defendants' breach of the CUBANACAN Private Label Agreement.

**III.   Breach of Contract. The H.R. Agreement.**

51.     Plaintiffs reallege and incorporate the foregoing allegations contained in paragraphs 1-34 as if fully stated herein.

52.     On or about July 2013, Plaintiffs and Defendant Cubanacan entered into an oral agreement for the production and distribution of "H.R." brand cigars.

53.     The terms of the H.R. Agreement were clear enough that the parties could understand what each was supposed to do.

54.     The parties agreed to give each other something of value. Namely, Plaintiffs would, through the Los Charutos cigar factory, produce premium cigars under the "H.R." brand and make such cigars available for import by Defendant Cubanacan.

Defendant Cubanacan, in turn, would sell the goods in the United States and pay Plaintiffs eighty percent (80%) of the proceeds (minus expenses) on a monthly basis.  Id.

55.     The parties agreed to the essential terms of the contract.

56.     Plaintiffs did everything required by the H.R. Agreement.

57.     Defendants breached the agreement by failing to make any payments as required by the H.R. Agreement.

58.     Plaintiffs have been harmed by Defendants' breach of the H.R. Agreement.

**IV.     Breach of Covenant of Good Faith and Fair Dealing.**

59.     Plaintiffs reallege and incorporate the foregoing allegations contained in paragraphs 1-34 as if fully stated herein.

60.     Plaintiffs (collectively) and Defendant Cubanacan entered into at least three contracts, namely, the SONEROS Distribution Agreement, the CUBANACAN Private Label Agreement, and the H.R. Agreement.

61.     Plaintiffs did all, or substantially all, of the significant things that the contracts required them to do, namely to produce premium cigars and make same available for Defendant Cubanacan's import into the United States.

62.     All conditions required for Plaintiffs performance occurred.

63.     Defendant Cubanacan's omissions to make payment to Plaintiffs unfairly interfered with Plaintiffs receipt of the contract's benefits.

64.     Defendant Cubanacan's conduct did not comport with the Plaintiffs' reasonable contractual expectations under the specific parts of the contracts, namely, the payment provisions.

65.     As such, Plaintiffs were harmed by Defendant Cubanacan's conduct.

**V.     <u>Breach of Contract – Implied In Fact</u>.**

66.     Plaintiffs reallege and incorporate the foregoing allegations contained in paragraphs 1-34 as if fully stated herein.

67.     Plaintiffs gave a benefit to Defendant Cubanacan in the nature of finished cigar products under the SONEROS, CUBANACAN, and H.R. brands.

68.     Defendant Cubanacan knew of the benefit.

69.     Defendant Cubanacan accepted or retained the benefit.

70.     The circumstances are such that Defendant Cubanacan should, in all fairness, be required to pay for the benefit.

**VI.     <u>Breach of Contract – Third Party Beneficiary</u>.**

71.     Plaintiffs Omar Gonzalez and Los Charutos reallege and incorporate the foregoing allegations contained in paragraphs 1-34 as if fully stated herein.

72.     Plaintiffs Omar Gonzalez and Los Charutos are third party beneficiaries of the SONEROS Distribution Agreement, the CUBANACAN Private Label Agreement, and the H.R. Agreement entered into between the parties.

73.     For the foregoing reasons supporting breach of contract by Plaintiff Soneros against Defendant Cubanacan, Plaintiffs' Omar Gonzalez and Los Charutos allege breach of contract as third party beneficiaries.

74.     The parties agreed to give each other something of value. Namely, Plaintiff Soneros would, through the Los Charutos cigar factory and efforts of Omar Gonzalez, produce premium cigars under the "SONEROS", "CUBANACAN", and

"H.R." brands and make such cigars available for import by Defendant Cubanacan.

Defendant Cubanacan, in turn, would sell the goods in the United States and pay Plaintiff

Soneros sixty percent (60%) of the proceeds on a monthly basis (under the SONEROS

Distribution Agreement), all costs associated with producing the CUBANACAN cigars

(under the CUBANACAN Private Label Agreement), and eighty percent (80%) of the

proceeds (minus expenses) of the sale of the "H.R." cigars (under the H.R. Agreement).

75.     The parties agreed to the essential terms of the contracts knowing that

Plaintiffs Omar Gonzalez and Los Charutos would be third party beneficiaries.

76.     Plaintiffs did everything required by the contracts.

77.     Defendants breached the agreement by failing to make any payments as

required by the contracts.

78.     Plaintiffs Omar Gonzalez and Los Charutos, as third party beneficiaries,

have been harmed by Defendants' breach of the contracts.

**VII.    Open Account.**

79.      Plaintiffs reallege and incorporate the foregoing allegations contained in

paragraphs 1-34 as if fully stated herein.

80.     Plaintiffs and Defendants had transactions between them.

81.     An account existed between Plaintiffs and Defendants in which the parties

had a series of charges, payments, and adjustments.

82.     On several occasions, Plaintiffs prepared an itemized statement of the

account for a total outstanding owed to them in the amount in excess of $800,000.

83.     Defendants owe all money on the account.

84.     Plaintiffs have been harmed, and will continue to be harmed, if Defendants do not make full payment on the open account.

**VIII.   Violation of Lanham Act 15 U.S.C. §1114 - Trademark Infringement Federal  Registration No. 4,467,906 "SONEROS and Design".**



85.     Plaintiff Soneros realleges and incorporates the foregoing allegations contained in paragraphs 1-34 as if fully stated herein.

86.     Plaintiff Soneros realleges and incorporates the foregoing allegations contained in paragraphs as if fully stated herein.

87.     Plaintiff Soneros owns federal trademark Registration No. 4,467,906 (the "'906 Mark") in the mark "SONEROS and Design" as used in connection with high quality cigars.  See Exhibit B.

88.     The '906 Mark is live and subsisting and is fully protectable under the Lanham Act.  Id.

89.     Plaintiff Soneros' trademark rights in the mark "SONEROS and Design" dates back to at least as early as July 19, 2013.

90.     Plaintiff Soneros' mark "SONEROS and Design" is inherently distinctive.

91.     Plaintiff Soneros initially authorized Defendants to use the Mark "SONEROS and Design" in connection with cigars pursuant to the Distribution Agreement.  Due to Defendants' breach of the Distribution Agreement, the continued sale of the cigars bearing the '906 mark constitute an unauthorized use and therefore infringement.

13

92.     Defendants' infringing sale of goods bearing the "SONEROS and Design" mark is identical, or nearly identical to Soneros' mark "SONEROS and Design".

93.     The channels of trade for Plaintiff Soneros' cigars and Defendants' goods bearing the Infringing Mark "SONEROS and Design" are identical.

94.     The goods are identical.

95.     The class of purchasers is identical.

96.     Plaintiff Soneros' rights in its mark are superior to Defendants' unauthorized use of the Infringing Mark "SONEROS and Design".

97.     Defendants' use is in violation of 15 U.S.C. §1114. Unless enjoined, Defendants' continued infringement of Plaintiff Soneros' Registered Trademark "SONEROS and Design" will cause irreparable injury to Plaintiff Soneros.

98.     Plaintiff Soneros has been harmed by Defendants' conduct as alleged above in an amount not yet known.  Plaintiff Soneros has no adequate remedy at law.

### IX.     Violation of Lanham Act 15 U.S.C. §1114 - Trademark Infringement Federal Registration No. 4,464,106 "SONEROS" (words only).

99.     Plaintiff Soneros realleges and incorporates the foregoing allegations contained in paragraphs 1-34 as if fully stated herein.

100.    Plaintiff Soneros owns federal trademark Registration No. 4,464,106 (the "'106 Mark") in the mark "SONEROS" as used in connection with high quality cigars. See Exhibit C.

101.    The '106 Mark is live and subsisting and is fully protectable under the Lanham Act.  Id.

102.     Plaintiff Soneros' trademark rights in the mark "SONEROS" dates back to at least as early as July 19, 2013.

103.     Plaintiff Soneros' mark "SONEROS" is inherently distinctive.

104.     Plaintiff Soneros initially authorized Defendants to use the mark "SONEROS" in connection with cigars pursuant to the SONEROS Distribution Agreement.  Due to Defendants' breach of the SONEROS Distribution Agreement, the continued sale of the cigars bearing the '106 mark constitute an unauthorized use and therefore infringement.

105.     Defendants' Infringing Mark "SONEROS" is identical, or nearly identical to Soneros' mark "SONEROS".

106.     The channels of trade for Plaintiff Soneros' cigars and Defendants' goods bearing the Infringing Mark "SONEROS" are identical.

107.     The goods are identical.

108.     The class of purchasers is identical.

109.     Plaintiff Soneros' rights in its mark are superior to Defendants' unauthorized use of the Infringing Mark "SONEROS".

110.     Defendants' use is in violation of 15 U.S.C. §1114. Unless enjoined, Defendants' continued infringement of Plaintiff Soneros' Registered Trademark "SONEROS" will cause irreparable injury to Plaintiff Soneros.

111.     Plaintiff Soneros has been harmed by Defendants' conduct as alleged above in an amount not yet known.  Plaintiff Soneros has no adequate remedy at law.

**X.     Common Law Trademark Infringement – The H.R. Mark.**

112.     Plaintiff Luis Gonzalez realleges and incorporates the foregoing

allegations contained in paragraphs 1-34 as if fully stated herein.

113.     Plaintiff Luis Gonzalez owns federal trademark Application No. 85/402,797 for "H.R." for use in connection with cigars (the "H.R. Mark"). <u>See</u> Exhibit D.

114.     Although not yet registered, the H.R. Mark is protected under common law.

115.     Plaintiff Luis Gonzalez' trademark rights in the mark H.R. dates back to at least as early as March 30, 2013.

116.     Plaintiff Luis Gonzalez' mark "H.R." is inherently distinctive.

117.     Plaintiff Luis Gonzalez initially authorized Defendants to use the Mark "H.R." in connection with cigars pursuant to the H.R. Agreement.  Due to Defendants' failure to make any payment as agreed to, the continued sale of the cigars bearing the "H.R." mark constitutes an unauthorized use and therefore infringement.

118.     Defendants' infringing sale of goods bearing the "H.R." is identical, or nearly identical to Luis Gonzalez' mark "H.R."

119.     The channels of trade for Plaintiff Luis Gonzalez' cigars and Defendants' goods bearing the Infringing Mark "H.R." are identical.

120.     The goods are identical.

121.     The class of purchasers is identical.

122.     Plaintiff Luis Gonzalez' rights in its mark are superior to Defendants' unauthorized use of the Infringing Mark "H.R."

123.     Unless enjoined, Defendants' continued infringement of Plaintiff Luis Gonzalez' trademark "H.R." will cause irreparable injury to Plaintiff Luis Gonzalez.

124.     Plaintiff Luis Gonzalez has been harmed by Defendants' conduct as alleged above in an amount not yet known.  Plaintiff Luis Gonzalez has no adequate remedy at law.

**XI.      Unjust Enrichment.**

125.     Plaintiffs reallege and incorporate the foregoing allegations contained in paragraphs 1-34 as if fully stated herein.

126.     Plaintiffs conferred a benefit on the Defendants.

127.     The Defendants had knowledge of the benefit.

128.     The Defendants accepted or retained the benefit conferred.

129.     The circumstances are such that it would be inequitable for the Defendants to retain the benefit without paying fair value for it.

130.     Plaintiffs have been and will continue to be harmed by Defendants unjust enrichment.

**XII.      False Association – Violation of the Lanham Act 15 U.S.C. §1125.**

131.     Plaintiffs reallege and incorporate the foregoing allegations contained in paragraphs 1-34 as if fully stated herein.

132.     Because of non-payment due under the SONEROS Distribution Agreement and the H.R. Agreement, Plaintiff Soneros provided notice of termination of the SONEROS Distribution Agreement to Defendants on July 9, 2015.

133.     Defendants failed to accept the termination, or even offer a cure, and continued to represent to the public that Defendant Cubanacan is the authorized dealer of the "SONEROS" cigars as well as the "H.R." brand.

134.   To this day, Defendants continue to erroneously represent to consumers and retail customers that they are the only authorized dealer to these goods in the United States.

135.   Defendants' actions are causing damage to Plaintiffs and unless enjoined, will continue to cause injury to Plaintiffs' trademarks and business.

WHEREFORE, Plaintiffs pray for relief as follows: A declaration and/or judgment from this court that:

1.

    (a)    Defendants have infringed the "SONEROS" and "H.R." trademarks in violation of 15 U.S.C. §1125(a)(1)(A);

    (b)    Defendants have engaged in unfair business practices/false advertising/misrepresentations in violation of 15 U.S.C. 1125(a)(1)(B);

    (c)    Defendants have been unjustly enriched; and

    (d)    Defendants' conduct was intentional, willful and/or malicious;

2.   officers, directors, agents, servants, employees, affiliates, attorneys, parents, subsidiaries, divisions, successors and assigns, and those persons acting in concert or in participation with Defendants from showing, selling, marketing, distributing, discussing, or displaying the products bearing the Infringing Marks "SONEROS" and "H.R." that are confusingly similar to the "SONEROS" and "H.R." trademarks.

3.   An order and judgment requiring Defendants to deliver to Plaintiff for destruction all products bearing the Infringing Marks "SONEROS" and "H.R."; and the Defendants be required to recall all such products that it has delivered, shipped or otherwise provided to any distributors, customers, or third parties, and refund any monies paid for such

products;

4.      Actual damages suffered by Plaintiff as a result of Defendants' unlawful conduct, in an amount to be proven at trial, including without limitation lost profits and costs for corrective advertising, as well as pre-judgment interest at the maximum rate authorized by law;

5.      Treble damages pursuant to 15 U.S.C. §1117;

6.      Punitive damages as may be allowed under Florida State law;

7.      Costs of the suit and reasonable attorneys' fees pursuant to the terms of the SONEROS Distribution Agreement and/or 15 U.S.C. §1117 or as otherwise provided by law;

8.      Restitution relief against Defendants and in favor of Plaintiffs, including disgorgement of wrongfully obtained profits and any other appropriate relief; and

9.      Any other remedy relief as this Court deems just and proper.


## JURY DEMAND

Plaintiffs hereby demand trial by jury of all issues so triable.


Dated September 4, 2015

s/FRANK HERRERA
H New Media Law
12008 South Shore Blvd.,
Suite 105
Wellington, Florida 33414
(561) 900-2486
fherrera@hnewmedia.com
hnewmedia.com